## 3845.   HOLCOMB v. MASHBURN.

Where one interested in a business conducted by a corporation agreed orally with a creditor of the corporation, in consideration of a loan made to the promisor, to be used in the business, that he would see the debt of the corporation paid, and would likewise see that all future obliga-tions of the corporation to the creditor were discharged, the agreement was not void under the statute of frauds, and the promisor was liable to the creditor both for the amount of the past-due indebtedness and for the value of goods afterwards sold the corporation upon the faith of his promise.

DECIDED MARCH 19, 1912.

Appeal; from Fulton superior court—Judge Pendleton. Sep-tember 22, 1911.

*Moore & Pomeroy,* for plaintiff in error.

*J. E. & L. F. McClelland,* contra.

POTTLE, J. Mashburn sued Holcomb on a promissory note. The defendant admitted the execution of the note, but pleaded that Mashburn was indebted to him on an account in a sum larger than the note sued on. At the conclusion of the evidence the judge di-rected a verdict in favor of the plaintiff, and this is the error as-signed.

It appears, from the evidence, that Mashburn was manager for,

and largely interested in, a corporation by the name of the Southern Soda Water Company. Holcomb was a member of the firm of Marshall & Holcomb, which had been selling to the corporation lithia water, and the corporation had become indebted to the partnership in the sum of $450. While this indebtedness was in existence Mashburn applied to the firm for a loan of $500, to be used in the business of the Southern Soda Water Company. As to the agreement between Mashburn and the partnership, in reference to this loan, the defendant testified: "Whereupon he stated that if Marshall & Holcomb would make the loan to him as originally agreed, he would not only pay it back on a certain day, but would give the firm a check for the account of $250 which they had on the books against the Southern Soda Water Company, and he would personally see that every dollar they sold them in the future would be paid. Whereupon I made the loan." Further the defendant testified that Mashburn said to him: "You continue to sell, you make this loan, and I'll pay this back" (on a certain day some nine or ten days ahead), "and at the same time I'll pay you $250 on account— pay the firm of Marshall & Holcomb $250 on account—and I'll see that they get every cent the Southern Soda Water Company owes them, and every cent they become obligated to you for in the future. I'll see that you get your money." Again, on cross-examination Holcomb testified that at the time of the conversation between him and Mashburn took place, the words used by Mashburn were that "he would personally see that the account was paid." It appeared that shortly after this conversation took place, the firm of Marshall & Holcomb loaned Mashburn $500, and continued to sell and deliver lithia water to the Southern Soda Water Company, at its place of business in Atlanta, and that an admitted indebtedness of $317.14 arose. Before suit was instituted the firm of Marshall & Holcomb transferred to Holcomb in writing the account which they claimed against Mashburn. It appears that the defendant's firm delivered at the company's place of business coupon books containing tickets, and that the lithia water was delivered in exchange for these tickets. The books were receipted for by clerks from time to time as they were delivered. The presiding judge directed a verdict in favor of the plaintiff, upon the theory that the contract relied on by the defendant was void under the fourth section of the statute of frauds, being

a " promise to answer for the debt, default, or miscarriage of another." Civil Code (1910), § 3222.

There is no testimony that the defendant's firm expressly released the Southern Soda Water Company from the indebtedness which it owed at the time of the agreement with Mashburn. It is very clear, however, from the testimony of Holcomb, that the agreement with Mashburn was that a loan of $500 would be made to him, provided he would pay or see paid the old account due by the company of which he was manager, and that this loan was actually made in pursuance of this agreement. This being so, there was such performance on one side and acceptance by the other as to take the agreement out of the statute of frauds and to bring it within the exception stated in the Civil Code (1910), § 3223. The same rule would apply to the future sales, but, in addition to this, the contract as testified to by Holcomb was an original, and not a collateral, undertaking on the part of Mashburn. See *Maddox* v. *Pierce*, 74 *Ga.* 838; *Sext* v. *Geise*, 80 *Ga.* 698 (6 S. E. 174); *Fersl's Sons* v. *Bank of Waycross*, 111 *Ga.* 229 (36 S. E. 773); *Evans* v. *Griffin*, 1 *Ga. App.* 327 (57 S. E. 921). One test is whether the original debtor is still held liable, but this is not the only test; because, if the undertaking be a joint one on the part of the original debtor and the new promisor, the undertaking of the latter would still be an original promise, and not a collateral agreement to become security for the original debt. *Cruse* v. *Foster*, 76 *Ga.* 723. The fact that the coupon books were receipted for in the name of the corporation by one of its clerks might be a circumstance to determine whether the creditor still looked to the corporation for payment, but it is by no means conclusive on the question, and is subject to explanation. The financial condition of the Southern Soda Water Company, and Mashburn's interest in the company, at the time the defendant claims he made the agreement with Mashburn, are proper subject-matter of inquiry, as circumstances tending to explain why Mashburn might have made the agreement testified to by the defendant.                   *Judgment reversed.*