### 6832. FOOTE *v.* REECE & SON.

1. The promise to answer for the debt, default, or miscarriage of another which must be in writing in order to bind the promisor (Civil Code, § 3222) does not include an original undertaking whereby a new promisor, for a valuable consideration, substitutes himself as the party who is to perform and releases the original promisor. *Evans* v. *Griffin*, 1 *Ga. App.* 327, 328 (57 S. E. 921). "A promise to pay the pre-existing debt of another, without any detriment or inconvenience to the creditor, or any benefit secured to the debtor in consequence of the undertaking, is a mere nudum pactum." *Davis* v. *Tift*, 70 *Ga.* 52 (2).

(*a*) Under the most favorable construction of the evidence for the plaintiffs it does not appear that the original debtor was in fact released, or that any detriment resulted to the plaintiffs or benefit accrued to the defendant by reason of the alleged promise; and, therefore, his obligation was merely one of suretyship, and should have been in writing. *Harris* v. *Paulk*, 10 *Ga. App.* 334 (73 S. E. 430).

(*b*) If in fact the plaintiffs delayed or refrained from taking legal steps in the effort to protect their interest by reason of a promise by the defendant to pay the debt of another, it does not appear from the record that this debt thereafter became unenforceable against the original debtors for any reason, and that the plaintiffs thus suffered such detriment as would operate as a consideration for the promise. *Stovall* v. *Hairston*, 55 *Ga.* 10.

2. "Where a creditor, his debtor, and a third person who owes the debtor agree in parol that such third person shall be substituted for the debtor and that the latter shall be released, the case is not within the statute

of frauds, but the debt is extinguished as to the debtor, and the third person becomes, by substitution, the debtor in his place." *Palmetto Mfg. Co.* v. *Parker*, 123 *Ga.* 798 (51 S. E. 714). No such state of facts appears in this case.

3. In view of what is ruled above, the court erred in overruling the motion for a new trial, and it is unnecessary to discuss the special assignments of error.

DECIDED APRIL 17, 1916.

Appeal; from Gilmer superior court—Judge Patterson. June 7, 1915.

*A. N. Edwards, William Butt,* for plaintiffs in error.

*Clark Ray,* contra.

WADE, J. We do not consider it necessary to amplify or discuss the rulings stated in the headnotes, but in order that the points passed upon may be better understood, the following statement of facts is appended: Reece & Son sued Foote in a justice's court, attaching to the summons a bill of particulars reciting that the defendant had bought from a certain firm, afterwards succeeded by the plaintiffs, various items therein set forth, aggregating $52.30. The case was tried on appeal in the superior court, and the trial resulted in a verdict in favor of the plaintiffs, and a motion for a new trial was made and overruled. According to the testimony for the plaintiffs, Wehunt & Newberry were operating a sawmill and were indebted to Reece & Son on an open account for supplies furnished. The account sued upon, except a ten-dollar order which was accepted as given by the defendant Foote, was first charged to Wehunt & Newberry, after the plaintiffs had been furnishing these debtors for some time. W. K. Reece testified, that he visited the sawmill in an effort to collect the money due his firm, and further testified as follows: "Oscar [Foote], the defendant, said that if I would leave the lumber alone he would pay the account sued on, except the ten-dollar order, which had not then been given, and I transferred that part of their account on our book to Oscar Foote. Wehunt & Newberry had mortgaged the lumber before defendant assumed this debt." "I do not know whether Oscar was a partner or not. We had started no legal proceeding at the time defendant agreed to assume this debt. I can't say whether defendant signed the ten-dollar order or not, I do not know his handwriting. We did not deliver the goods delivered on said order to defendant, and I do not know whether he received them or not. I have looked among

all my papers and failed to find the order. There was a mortgage upon the lumber. Wehunt & Newberry owed me something like $300, besides this account sued on." The brief of evidence set forth the following testimony as delivered in behalf of the plaintiffs by "A" Reece: "A Reece swore that some one brought them an order that was signed by Foote, to deliver certain goods which amounted to ten dollars, and that he delivered the goods to the bearer, and that he supposed the goods went to Foote. He also stated that after Foote made the promise that he would pay that debt, that he went away, and that from that time on he did not expect Wehunt & Newberry to pay it, but looked to Foote for his money. He, Reece, did nothing to the lumber after Foote made this promise." The record does not disclose who "A" Reece was, or what interest in the business of Reece & Son he may have had, or what knowledge he possessed of their affairs, other than may be surmised from this testimony. It may be that "A" Reece was but another name for W. K. Reece, and that these apparently different individuals were actually one and the same person; in which event the evidence from "A" Reece that some one brought them an order "that was signed by Foote" should of course be considered in connection with the other testimony of W. K. Reece that he could not say whether the defendant signed the ten-dollar order or not, as he did not know the defendant's handwriting.

The defendant denied that he had requested the plaintiffs not to take the lumber, and said that on the contrary he wanted them to do so and pay himself and other creditors of the debtor firm; that he was not in partnership with Wehunt & Newberry, but had a logging contract with them at $2.80 per thousand; that he "never promised to pay this account or any debt of Wehunt & Newberry at any time," and did not tell the plaintiffs to leave the lumber alone, as stated by them; that he never signed or authorized the ten-dollar order, or received any of the goods mentioned therein, but paid the plaintiffs for all that he purchased from them; that the lumber was sold under a mortgage which was foreclosed the next day after the plaintiffs were at the mill, and he lost about $250. There was other testimony in behalf of the defendant tending to corroborate his statement that he made no agreement to pay the debt of Wehunt & Newberry to the plaintiffs.        *Judgment reversed.   Russell, C. J., absent.*